**Affirmed in Part and Reversed and Rendered in Part and Memorandum Opinion filed August 23, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00771-CV

---

### ROBERT A. HAY, Appellant

### V.

### ECORP INTERNATIONAL, LLC; ECORP ENERGY MARKETING LLC; AND SENSA-LREC LLC, AS ASSIGNEE OF THE RIGHTS OF SENSA HOLDINGS, INC., Appellees

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2019-23189**

---

### MEMORANDUM OPINION

Appellant Robert A. Hay brings this interlocutory appeal challenging the trial court's denial of his motion to dismiss under the Texas Citizens Participation Act (TCPA) the claim of tortious interference asserted by appellees eCORP International, LLC; eCORP Energy Marketing LLC (eCEM); and SENSA-LREC, LLC, as assignee of the rights of SENSA Holdings, Inc. (SENSA), for Hay's

anonymous mailing of information to a third party to interfere with or prevent SENSA's purchase of a natural-gas storage facility. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12) (interlocutory appeal of denial of TCPA motion to dismiss).

Hay argues the trial court erred by (1) denying his motion to dismiss and (2) finding that his motion to dismiss was frivolous or filed solely for purposes of delay. We conclude that in the first step of the TCPA analysis Hay demonstrated that appellees' claim for tortious interference with prospective business relations is based on or in response to his exercise of free speech. In the second step, SENSA met its burden of establishing the prima facie elements of its cause of action against Hay. However, eCORP International and eCEM did not meet their burden on their claims for tortious interference with prospective business relations against Hay. In the third step of the TCPA analysis, Hay did not establish his defense of truth or substantial truth as a matter of law. Therefore, we affirm the trial court's denial of Hay's motion to dismiss as to SENSA but reverse with respect to eCORP International and eCEM. We also hold the trial court erred in determining that Hay's motion to dismiss was frivolous or brought solely for purposes of delay.

## I. BACKGROUND

Among other ventures, eCORP International is involved in the development, operation, sale, and acquisition of natural-gas storage facilities across the United States. In 2014, eCORP International, through affiliated entities, began strategically acquiring natural-gas storage assets which it believed to be undervalued. eCORP International also found a financial partner to raise capital for these acquisitions and created SENSA Holdings, Inc.[1] for the purpose of managing

---

[1] SENSA Holdings, Inc. is a platform company created for the purpose of acquiring and managing a portfolio of natural-gas storge assets. SENSA Holdings is owned by Sciens eCORP

the storage assets. eCORP International also created and formed eCEM to act as the exclusive marketing affiliate for the storage assets and platform, focusing on optimizing the capacity of storage facilities through trading and hedging strategies.

Hay had been involved with eCORP affiliated companies[2] for several years and was an officer at eCEM when he left the company in 2017. After he left eCEM, Hay's relationship with eCORP International's chairman of the board and CEO, John Thrash, deteriorated. The eCORP affiliated companies allege that Hay left eCEM to pursue a competing venture using proprietary models and information developed by eCORP affiliated companies. They also allege that Hay's departure and his alleged conspiracy with competing ventures resulted in the eCORP affiliated companies' inability to satisfy certain contractual requirements and acquire business investment, resulting in financial losses. In April 2019, appellees filed suit against Hay (as well as several other individuals and entities not relevant to this appeal)[3] alleging he conspired with the company that hired him on his departure from eCEM to usurp and misappropriate business plans and proprietary trading models developed by the eCORP affiliated companies.

The eCORP affiliated companies identified the Gill Ranch facility[4] as an acquisition target in 2017. About a year later, SENSA along with other eCORP affiliated companies,[5] filed a joint application with the owners of the Gill Ranch

---

Storage, in which eCORP Storage, LLC owns a direct 50% interest. Although the record does not provide specifics, eCORP Storage is represented, in the joint application to the California Public Utilities Commission, to be part of the "eCORP International, LLC family of companies."

[2] We generally refer to the "eCORP International, LLC family of companies" in this opinion as the eCORP affiliated companies.

[3] All of these additional claims remain pending in the trial court and are not a subject of this appeal.

[4] The Gill Ranch facility is located in Fresno, California. Pacific Gas and Electric Company (PG&E), a California utility, owns a 25% stake in the facility.

[5] The other eCORP entities involved in the joint application were Sciens eCORP Natural

facility, then a wholly-owned subsidiary of NW Natural Gas Storage, LLC, for transfer of control of Gill Ranch Storage, LLC. According to the joint application, Gill Ranch Storage, LLC owns a 75% undivided interest in the Gill Ranch facility. In the agreement between SENSA and NW Natural Gas Storage, LLC, SENSA agreed to purchase the outstanding limited liability interests in Gill Ranch Storage, LLC. The transfer had to be approved by the California Public Utilities Commission (CPUC) under California law.

Though the transaction was initially supported by all stakeholders, the CEO of NW Natural Gas Storage, LLC received the following anonymous letter in February 2019:

> To Whom It May Concern:
>
> RE: Gill Ranch
>
> John Thrash lies profusely in his statement to the California Public Utility Commission.
>
> The last utility that got tangled up with John Thrash wound up being pilfered for more than $25MM thru fraudulent transfers (see attached), the Stuart storage field did not perform as promised, and involved legal action that spanned a period of 6 years.
>
> The Stagecoach project likewise ended up in substantial litigation.
>
> eCORP did not build the Katy Hub, rather that honor goes to Western Gas Resources.
>
> There are five separate lawsuits currently filed against eCORP and John Thrash in Houston. All of the information, and more, can be found in the public record.
>
> The last thing PG&E needs is a partner like eCORP.

The documents attached to the letter included pleadings from various federal lawsuits which alleged misrepresentations and financial misconduct on the part of

---

Gas Storage Holdings, LLC; eCORP Storage, LLC; and SCIENS Natural Gas Holdings, LLC. None of these entities were parties in the trial court.

Thrash. The package appeared to be mailed from eCORP's Houston address. NW Natural Gas Storage, LLC forwarded the anonymous letter to eCORP affiliated companies, CPUC and CPUC's Office of the Safety Advocate (OSA), which withdrew from a settlement agreement approving the transfer in order to investigate the materials in the anonymous letter. After the eCORP affiliated companies filed suit against Hay, they learned he was the author of the anonymous letter.

CPUC ultimately approved the transfer, and the acquisition was completed after a delay. After a hearing, SENSA agreed to provide an additional commercial-crime insurance policy protecting CPUC and PG&E against financial malfeasance on the part of Thrash or any other officer of the eCORP affiliated companies. Appellees maintain the delay resulted in substantial additional costs, attorneys' fees, and other consequential damages.

In August 2020, appellees amended their petition to add a claim against Hay for tortious interference with prospective business relations arising from his dissemination of the anonymous package. Hay filed a motion to dismiss appellees' claims of tortious interference with prospective business relations pursuant to the TCPA, which was denied by the trial court. In addition, the trial court ordered sanctions imposed against Hay, stating:

> The Court further finds that the Motion is frivolous and/or was solely intended to delay. Accordingly, pursuant to Tex. Civ. Prac. & Rem. Code § 27.009(b), Defendant Robert A. Hay is hereby ORDERED to pay Plaintiffs' reasonable costs and attorneys' fees incurred in opposing the Motion.

After filing an interlocutory appeal, Hay asked this court to abate the appeal so that the trial court could make findings of fact in accordance with the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.007(a) ("If the court awards sanctions under

5

Section 27.009(b), the court *shall* issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.") (emphasis added).

We abated the appeal, and in December 2020 the trial court made the following finding:

> Plaintiff ECorp International did not bring the legal action to deter or prevent the moving party Defendant Robert Hay from exercising constitutional rights or for any improper purpose, including to harass or cause unnecessary delay or to increase the cost of litigation.

## II. ANALYSIS

In issue 1, Hay argues that the trial court erred in denying his motion to dismiss because (1) Hay's anonymous letter to Gill Ranch implicated his right to free speech and right to petition, (2) appellees failed to demonstrate their claim of tortious interference falls within the TCPA's commercial-speech exemption, and (3) appellees did not present clear and specific evidence supporting every element of their claim of tortious interference.[6]

## A.    TCPA framework

The purpose of the TCPA is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. The TCPA contemplates an expedited dismissal procedure when a "legal action" is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of

---

[6] Instead of responding to Hay's two appellate issues, appellees raise six separate issues that generally overlap with the issues raised by Hay. *See* Tex. R. App. P. 38.2 ("When practicable, the appellee's brief should respond to the appellant's issues or point in the order the appellant present those issues or points."). To the extent appellees' issues address points of error raised by Hay, we will address those issues.

6

association." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). The right of free speech and right to petition are at issue in this appeal. To accomplish this objective, the TCPA provides a multi-step process for the dismissal of a "legal action" to which it applies. *Montelongo v. Abrea*, 622 S.W.3d 290, 295–96 (Tex. 2021). In the first step, the party filing a motion to dismiss under the TCPA bears the burden to demonstrate that the "legal action" is "based on or is in response to," as relevant to this appeal, the party's exercise of the right of free speech and right to petition. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b). But under the second step, the court may not dismiss the action if the non-moving party "establishes by clear and specific evidence a prima facie case for each essential element of the claim." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Under the third step, the movant can still win dismissal if he establishes "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

In construing the TCPA and determining its applicability, we review statutory construction issues de novo. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Similarly, whether the parties have met their respective burdens is a question of law that we review de novo. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). Under the de novo standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Fawcett v. Grosu*, 498 S.W.3d 650, 656 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (internal quotation marks omitted).

## B.    The TCPA analysis

Hay argues that the trial court erred in denying his motion to dismiss because appellees' tortious interference claim is based on or in response to his

7

exercise of the right to petition and right of free speech.

### 1. First step—the right of free speech

"'Exercise of the right of free speech' as defined in the TCPA is a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). Therefore, as an initial matter, there must be a "communication." *Id*. (right of free speech is defined in TCPA to include communication). "Communication" as defined in the TCPA includes "making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1). Moreover, as the supreme court has recognized, private communications are covered by the TCPA, provided that they were made in connection with a matter of "public concern." *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017).

The parties agree that Hay's letter to Gill Ranch is considered a communication. However, they disagree about whether it was made in connection with a matter of public concern. The TCPA defines a matter of public concern as "a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7). Hay argues his anonymous letter clearly involved a matter of public concern because (1) the acquisition of the Gill Ranch facility required approval from the CPUC and (2) allegations of Thrash's history revealed appellees were "unreliable purchasers of a public utility." In response, appellees argue the anonymous package is not a matter of public concern because it was designed only to "besmudge a competitor and derail a private business deal." They further argue

8

that the letter itself belies Hay's position because the letter was sent to the owner of the Gill Ranch facility, not CPUC, nor did it seek the disclosure of information to the CPUC.

Appellees argue that the 2019 TCPA amendments and recent opinions from the supreme court reflect a concerted attempt to limit the broad applicability of the TCPA and have introduced a heightened standard for "a matter of public concern." Appellees rely on *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, in which the supreme court explained that not every communication related to one of the broad categories set out in section 27.001(7) is always a matter of public concern. 591 S.W.3d 127, 137 (Tex. 2019) (interpreting prior version of TCPA). In examining the context in which the *Creative Oil & Gas* communications were made, the court noted they were "private business communications to third-party purchasers of a single well's production" and there was no evidence "that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns" but, rather, that "the alleged communications were made to two private parties concerning modest production at a single well." *Id*. at 136. For that reason, the supreme court held that the "communications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA." *Id*.

This court has previously applied the *Creative Oil & Gas* analysis in holding that communications directed to an audience of existing customers or tenants regarding a private business dispute are not a matter of public concern for purposes of TCPA applicability. *Bowman v. Fortitude Consulting Grp., Inc*., No. 14-19-00686-CV, 2020 WL 3967807, at *4 (Tex. App.—Houston [14th Dist.] July 14, 2020, no pet.) (mem. op.); *see also Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P*., 14-18-00740-CV, 2020 WL 5087826, at *5

(Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.) (publicly-traded company failed to show by preponderance of evidence that amount owed pursuant to judgment was matter of public concern for purposes of TCPA). Utilizing the current statutory language, the facts before us do not solely describe a private business dispute.

The anonymous letter sent by Hay has a direct connection to a matter of public concern. The joint application requesting CPUC approval to transfer control of Gill Ranch Storage, LLC to SENSA states the "proposed transfer of control is in the public interest." In fact, California's statute requires that a transfer of control of such a utility must be approved by the CPUC. *See* Cal. Pub. Util. Code § 854(a). Further, SENSA's purchase of Gill Ranch Storage, LLC makes SENSA business partners with a public utility. Hay's anonymous letter addresses this fact by voicing his opinion that eCORP affiliated companies would not be good partners for PG&E, a public utility. The potential for the public utility to be exposed to unexpected financial costs, safety issues, or material misrepresentations by a business partner qualifies as a matter of political or other interest to the community or a subject of concern to the public. The fact that Hay sent the letter to NW Natural Gas Storage, LLC, instead of the public utility, is not determinative. *See Coleman*, 512 S.W.3d at 901 (statements need not be public to address matter of public concern). The communication, although sent to a private party, was regarding a matter of public concern.

The handling of Hay's letter also supports this conclusion. NW Natural Gas Storage, LLC forwarded Hay's letter to CPUC. After receiving the letter, OSA, an office within CPUC, filed a notice of withdrawal of consent to the settlement agreement. OSA expressed concern about whether the acquisition of Gill Ranch Storage, LLC by SENSA would negatively affect the Gill Ranch facility's ability

to safely operate and maintain their storage facilities and ensure the safety of its workers and the public as required by California law. *See* Cal. Pub. Util. Code § 451.

CPUC ultimately approved the transfer of ownership of the Gill Ranch Storage, LLC to SENSA; however, because of the allegations in the anonymous letter, SENSA provided expanded commercial crime insurance coverage for Gill Ranch Storage, LLC to protect the public utility from financial malfeasance of any officer of the eCORP affiliated companies and provided additional safety assurances and programs related to the Gill Ranch facility. Without regard to the merits of the accusations against Thrash, it is relevant that a public agency in California found Hay's letter to address a matter of public concern. We conclude that Hay has demonstrated that appellees' claim of tortious interference with prospective business relations is based on or in response to his exercise of free speech. Therefore, we need not address Hay's argument that appellees' claim of tortious interference is based on or in response to his exercise of his right to petition. *See* Tex. R. App. P. 47.1.

### 2. Commercial-speech exemption

The TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2). Appellees argued in the trial court, and here, that the TCPA's commercial-speech exemption applies to its claim against Hay. They argue that Hay was acting, not as an individual, but as an officer or executive of competing ventures, and was therefore primarily engaged in the business of selling

11

his services related to natural-gas trading. They further assert that Hay was in a position to profit from the anonymous letter because Hay might have "potentially greater access to [Gill Ranch] and [NW Natural Gas Storage], or by the economic blow this would potentially cause to Plaintiffs, leaving more space in the industry for him and his competing entities." Finally, appellees assert the prior owners of Gill Ranch facility are the types of customers "that Hay has and/or currently provides natural gas trading services to" and that Hay is in the business of providing natural gas trading services. However, accepting appellees arguments here would require us to impermissibly speculate beyond the record in front of us.

The supreme court clarified the proper construction of the commercial-speech exemption in *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684 (Tex. 2018) (per curiam) (interpreting prior version of TCPA). The exemption applies when:

> (1) the defendant was primarily engaged in the business of selling or leasing goods;
>
> (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services;
>
> (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides; and
>
> (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Id*. at 688. Thus, the court concluded, "the commercial-speech exemption applies only to certain communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as commercial speech which does no more than propose a commercial transaction." *Id*. at 690 (internal quotations omitted).

12

Here, Hay sent an anonymous letter to a company that was already in a contract with SENSA to transfer its ownership of Gill Ranch Storage, LLC (and therefore its ownership and interest in the Gill Ranch facility) to SENSA. Though Hay may be in the business of providing energy-trading services to customers, the record does not support the conclusion that he sent the anonymous letter in his capacity as a seller or lessor of energy-trading services. It is also relevant to our consideration that while Hay provides energy-trading services, the contract he intended to impact was not one for energy-trading services. It was, instead, a contract to purchase a business entity which owned a 75% interest in a natural-gas storage facility. Therefore, we conclude the commercial-speech exemption is inapplicable to the appellees' claim of tortious interference with prospective business relations.

Because Hay met this initial burden under the TCPA, the burden now shifts to appellees to provide clear-and-specific evidence of the prima facie case for each essential element on their claims to the court. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

### 3.    Second step—prima facie case

The TCPA does not define "clear and specific," so we apply the ordinary meaning of those terms: "clear" means "unambiguous," "sure," or "free from doubt," and "specific" means "explicit" or "relating to a particular named thing." *O'Hern v. Mughrabi*, 579 S.W.3d 594, 604 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also* Code Construction Act, Tex. Gov't Code Ann. §311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). The supreme court has explained the clear-and-specific evidence standard requires a plaintiff to "provide enough detail to show the factual basis for its claim." *Bedford v. Spassoff*, 520 S.W.3d 901, 904

(Tex. 2017) (per curiam) (internal quotation omitted). We only consider the pleadings and evidence in favor of the plaintiff's case when determining whether it established the requisite prima facie proof. *See Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 644 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) ("We review both the pleadings and evidence attached to Gensetix's motion to dismiss to determine whether Gensetix has provided 'enough detail to show the factual basis for its claim.'").

To prevail on a claim for tortious interference with prospective business relations, the plaintiffs must establish that: (1) a reasonable probability existed that the plaintiffs would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiffs injury; and (5) the plaintiffs suffered actual damage or loss as a result. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (holding plaintiff must establish defendant's conduct was independently tortious or wrongful, meaning defendant's conduct "would be actionable under a recognized tort"). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations[.]" *Sturges*, 52 S.W.3d at 726.

### a.   eCEM and eCORP International

Hay argues that eCEM and eCORP International cannot meet their burden of establishing clear-and-specific evidence of the prima facie case for each essential element on their claims. We agree.

SENSA contracted to purchase Gill Ranch Storage, LLC (and ultimately purchased), the owner and operator of the Gill Ranch facility. SENSA, along with eCORP Storage, was a party to the joint application for transfer of control filed with the CPUC. eCEM and eCORP International were not parties to the acquisition.[7] Based on the record, eCORP International and eCEM have not demonstrated that a reasonable probability existed that they would have entered into a business relationship with NW Natural Gas Storage, LLC for the purchase of Gill Ranch Storage, LLC. Therefore, eCEM and eCORP International cannot establish the prima facie elements for the claim of tortious inference with prospective business relations, and the trial court erred in denying Hay's motion with respect to eCEM and eCORP International.

We sustain Hay's issue one in part.

### b.    SENSA

As the facts reflect, SENSA is differently situated. Viewing the pleadings and evidence in the light most favorable to SENSA, we conclude that they support a rational inference that: (1) Hay intended for his anonymous letter to interfere with SENSA's prospective business relations, *see In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (explaining that TCPA "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence"); (2) there was a reasonable probability that Hay's letter interfered with those relations by delaying the contract, *see Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d

---

[7] The joint application also identifies eCorp Storage, LLC as one of the buyer companies. However, while eCORP Storage, LLC is identified as part of the "eCORP International, LLC family of companies," the relationship between eCORP Storage, LLC and eCORP International was not established. eCORP International and eCEM argue in the briefing that they would have benefited from the agreement between SENSA and NW Natural Gas Storage, LLC. However, the fact they would have benefited from SENSA's acquisition of Gill Ranch Storage, LLC after SENSA's acquisition does not establish any prima facie elements of their claim for tortious interference with prospective business relations.

469, 474 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (explaining that "causation requires that the plaintiff bring forth sufficient facts so that the evidence, and logical inferences drawn from the evidence, support a reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about injury"); and (3) SENSA suffered actual damage or loss through additional attorney's fees and costs, *see Coinmach Corp.*, 417 S.W.3d at 923. However, the requirement that Hay's conduct was independently tortious or unlawful is disputed and requires further analysis.

In his motion to dismiss, Hay maintains his conduct in sending the letter was not tortious or unlawful and that appellees cannot meet their burden. In response, appellees assert three independent bases for determining Hay's conduct was independently tortious or unlawful: (1) Hay's statement was false and defamatory[8]; (2) Hay committed mail fraud by sending the letter with eCORP International's return address[9]; and (3) Hay committed common-law fraud by making fraudulent statements.[10] However, appellees are not required to prove an independent tort. *See*

---

[8] In the trial court, appellees argued that Hay made false and defamatory statements in the anonymous letter that are sufficient to constitute independently tortious conduct, specifically Hay's statement that Thrash lied profusely in his statement to CPUC. On appeal, appellees argue that Hay's statement constitutes business disparagement. A claim of business disparagement requires—among other elements—that the defendant published false and disparaging information about a plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

[9] Mail fraud is a federal crime. *See* 18 U.S.C. § 1341. The two basic elements of a mail-fraud offense are (1) the scheme to defraud and (2) causing a mailing for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8 (1954). Hay argues that mail fraud is not a cause of action that satisfies the requirement that defendant's conduct was independently tortious or unlawful under state law because it is a federal crime. We need not consider this argument as SENSA succeeded in meeting the prima facie elements of its cause of action by demonstrating that Hay's conduct in making false and defamatory statements was independently tortious. Tex. R. App. P. 47.1.

[10] We similarly do not reach whether Hay's conduct in sending the anonymous letter was independently tortious as common-law fraud. Tex. R. App. P. 47.1.

*Sturges*, 52 S.W.3d at 726. Appellees only have to prove that Hay's conduct would be actionable under a recognized tort. *Id*. ("a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded").

If not true, Hay's accusation that Thrash and SENSA made false statements in a governmental filing would support the conclusion such an accusation was disparaging or defamatory to SENSA's business reputation. Therefore, SENSA meets its burden of demonstrating that Hay's conduct was independently tortious if it demonstrates that Hay's statement was false.

### c. Prima facie evidence Hay's statement was false and therefore tortious

With his anonymous letter, Hay enclosed a single page from the joint application offering information about the history and industry experience of eCORP Storage and the eCORP affiliated companies. Therefore, the parties confine their arguments to the statements and representations made in the joint application for the transfer of control of Gill Ranch Storage, LLC. Thrash also included a verification of the information provided in the joint application on behalf of SENSA under penalty of perjury. Thrash was described in the joint application as a director of SENSA as well as the sole manager of eCORP Storage.

The first sentence of Hay's anonymous letter forms the primary dispute between the parties:[11] "John Thrash lies profusely in his statement to the California Public Utility Commission." The only statement in Hay's letter that addresses the accusation that Thrash had lied or made misrepresentations to the CPUC is the

---

[11] The appellees' response to the motion to dismiss only addresses the first sentence of Hay's letter as false. The remainder of the statements in Hay's letter do not address false statements in the joint application. Rather, they can best be described as providing additional information that Hay believed to be relevant.

following: "eCORP did not build the Katy Hub, rather that honor goes to Western Gas Resources." The joint application filed by SENSA did not state that an eCORP affiliated company built the Katy Hub. Rather, the joint application states, "the eCORP Companies developed and operated the highly market significant Katy [Hub]." Further, SENSA supports its position with an affidavit from Thrash that explains why the statement about Thrash lying in the joint application was false:

> eCORP and Alcorn Exploration entered a joint venture to develop storage at Katy Hub. Western Gas Resources later acquired eCORP's position in the joint venture for ten times its investment and contracted eCORP to develop and build Katy Hub Phase II.

In determining whether a plaintiff presented evidence supporting a prima facie case, we consider only the pleadings and evidence in favor of the plaintiff's case. *See Gensetix, Inc.*, 616 S.W.3d at 644. We do not consider whether the defendant presented evidence rebutting the plaintiff's case; such evidence is not appropriate in determining whether the plaintiff presented a prima facie case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (issue is whether claimant established prima facie case for each essential element). Because SENSA has brought forward clear-and-specific evidence, even if disputed, that Hay's statement "John Thrash lies profusely" was false and defamatory, we conclude that SENSA has met its burden under the TCPA's second step.

### 4. Third step—proof of defense as a matter of law

Hay's burden in the third step is to establish a defense as a matter of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d). We consider all the evidence in determining whether Hay established a defensive ground. *See D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 488 (Tex. App.—Dallas 2015), *aff'd in part, rev'd in part on other grounds*, 529 S.W.3d 429 (Tex. 2017).

The parties disagree over the history of the Katy Hub and what role, if any,

18

the eCORP affiliated companies played in its development. The record developed as part of Hay's motion to dismiss reflects that the Katy Hub was built in the 1990s and did not involve any of the now-existing eCORP affiliated companies. Hay provided evidence reflecting that the records of the Railroad Commission of Texas do not include any reference to Thrash or any eCORP affiliated companies. It is notable that while in some places the joint application refers to "Members of the eCORP Companies" when discussing the Katy Hub, the joint application states only "the eCORP Companies developed and operated the highly market significant Katy [Hub]." There is also no indication in the joint application that involvement in the Katy Hub was limited to principals of eCORP affiliated companies. As it relates to operating the Katy Hub, though the joint application represents that eCORP affiliated companies previously operated the facility, the record developed as part of Hay's motion to dismiss reflects the eCORP affiliated companies were never involved with the operation of the Katy Hub. Thrash's affidavit, produced in litigation, establishes the eCORP affiliated companies never operated the facility though principals at eCORP International previously served in management roles for the entity that did operate the Katy Hub.

Considering the record established by both parties, a fact question has been raised whether Hay's statement "John Thrash lies profusely in his statement to the California Public Utility Commission" was false. Therefore, we conclude that Hay has not established his defense as a matter of law. The trial court did not err in denying Hay's motion to dismiss with respect to SENSA's claims.[12]

We overrule issue one in part.

---

[12] In both the trial court and this court, appellees argued that if the TCPA requires dismissal of their claim against Hay, then the TCPA is unconstitutional because it violates their due process rights and the Texas Constitution's "open courts" provision. Tex. Const. art. I. § 13. On appeal, Hay raises a sub-issue that the TCPA does not violate the Texas Constitution. Having concluded that the TCPA does not bar appellees' claim, we need not address this issue.

19

## C. Hay's motion to dismiss was not frivolous

In issue 2, Hay argues the trial court erred in determining his motion to dismiss was frivolous or filed solely for purposes of delay.

The trial court in its order denying Hay's motion to dismiss allowed appellees to recover their attorney's fees stating that Hay's motion was "frivolous and/or was solely intended to delay." Hay asserts the trial court erred in making this determination. He argues that even if we do not agree that his motion to dismiss should have been granted, he had a reasonable basis for seeking dismissal pursuant to the TCPA. Although the court's order does not determine the amount of fees and costs recoverable by appellees, it made the threshold recoverability findings under section 27.009(b) necessary to support an award, and we may consider Hay's challenge to those findings. *See Patriot Contracting, LLC v. Mid-Main Properties, LP*, No. 14-20-00724-CV, 2022 WL 1251236, at *9 (Tex. App.—Houston [14th Dist.] Apr. 28, 2022, pet. filed).

If a trial court grants a motion to dismiss under the TCPA, the trial court (1) is required to award the moving party court costs and reasonable attorney's fees incurred in defending against the action and (2) may also award sanctions against the party who brought the legal action as the court determines sufficient to deter the party from bringing similar actions. Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a). As discussed above, the trial court erred by not granting Hay's motion with respect to eCORP International and eCEM. Therefore, Hay is entitled to an award of attorney's fees and costs as to eCORP International and eCEM. *Id.* On remand, the trial court shall consider an appropriate award. *Id.*

In contrast, "[i]f the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court *may* award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem.

Code § 27.009(b) (emphasis added). "[A] finding that a motion to dismiss is not well taken must precede an award of the respondent's attorney's fees under Section 27.009(b)." *In re Calkins*, 580 S.W.3d 287, 300 (Tex. App.—Houston [1st Dist.] 2019, no pet.). We review the trial court's decision to award attorney's fees under this section for an abuse of discretion. *Patriot Contracting*, 2022 WL 1251236, at *9; *see also Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.— Austin 2018, pet. denied). "A trial court abuses its discretion if its decision 'is arbitrary, unreasonable, or without reference to guiding principles.'" *Sullivan*, 551 S.W.3d at 857 (quoting *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)); *see also Navidea*, 2020 WL 5087826, at *6.

The term "frivolous" is not defined in the TCPA. But "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has 'no basis in law or fact' and 'lacks a legal basis or legal merit.'" *Sullivan*, 551 S.W.3d at 857 (quoting *Frivolous*, Webster's Third New Int'l Dictionary 913 (2002); *Frivolous*, Black's Law Dictionary 739 (9th ed. 2009)). The fact that a motion to dismiss under the TCPA is ultimately denied is not sufficient, in and of itself, to support a finding that the motion was frivolous. *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 244 (Tex. App.—Eastland 2019, no pet.); *see also Mosaic Baybrook One LP v. Cessor*, No. 14-19-00514-CV, 2021 WL 2656613, at *12 (Tex. App.—Houston [14th Dist.] June 29, 2021, pet. dism'd) (mem. op.) ("Several courts, including our own, have concluded that even if the TCPA ultimately does not apply, a movant's motion to dismiss may still be non-frivolous.").

In his motion to dismiss, Hay argued the TCPA applied because the anonymous letter was an exercise of his right to free speech and his right to petition. Though we expressed no opinion on whether Hay's anonymous letter was

21

an exercise of his right to petition, we concluded that the letter was based on his right to free speech as defined in the TCPA. Further, although we conclude that SENSA established a prima facie case for its claim of tortious interference with prospective business relations, the evidence of the falsity of Hay's statements in the anonymous letter was disputed and raised a fact issue. On this record, we cannot conclude that the motion did not have a basis in fact or law. Therefore, we hold the trial court erred in its determination that Hay's motion was "frivolous and/or was solely intended to delay."

We sustain Hay's second issue.

### III. CONCLUSION

Having concluded the trial court did not err in denying Hay's motion to dismiss with respect to SENSA's claim for tortious interference, we overrule Hay's first issue in part. We reverse the trial court's order denying Hay's motion to dismiss with respect to eCORP International and eCEM's claim for tortious interference against Hay. We sustain Hay's second issue, reverse the trial court's award of attorney's fees and costs against Hay, and render judgment denying appellees' request for attorney's fees and costs. *See Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 223 (Tex. App.—Eastland 2019, pet. denied) (rendering judgment that non-movant take nothing on its request for attorney's fees under TCPA when trial court abused its discretion in awarding fees under TCPA § 27.009(b)); *Navidea*, 2020 WL 5087826, at *6.

We further direct the clerk of this court to issue the mandate immediately.[13]

---

[13] Appellees filed a motion with this court seeking issuance of the mandate at the same time as the judgment. They argue that although this appeal concerns a very narrow part of the case pending in the trial court, because of TCPA's mandatory stay of all trial court proceedings, the entire case has been stayed since November 2020. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(b). This court may issue a mandate early "if the parties so agree, or for good cause on the motion of a party." Tex. R. App. P. 18.1(c). In an accelerated appeal, as the appeal before us

At that time, the trial court should conduct proceedings regarding consideration of fees and costs pursuant to the TCPA with respect to eCORP International and eCEM's claim for tortious interference against Hay.


/s/    Charles A. Spain
Justice

Panel consists of Justices Wise, Spain, and Hassan.

---

is, this court may issue the mandate with its judgment or delay the mandate until the appeal is finally disposed of. Tex. R. App. P. 18.6. Hay has filed no opposition to appellees' motion to expedite the mandate. Given the circumstances of this case and the stay of the trial-court proceedings, we grant appellees' motion.